UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JOSHUA RYAN GROW,

Petitioner,

v.

JAMES DZURENDA, *et al.*,

Respondents.

Case No. 3:17-cv-00637-MMD-WGC

ORDER

## I.    INTRODUCTION

In this habeas corpus action, brought by Joshua Ryan Grow, an individual incarcerated at the Northern Nevada Correctional Center, the remaining claims in Grow's petition are before the Court for adjudication on their merits. The Court will deny Grow's petition and deny him a certificate of appealability.

## II.    BACKGROUND

On March 1, 2013, Grow was charged by complaint, in a Carson City justice court, with one count of trafficking in a Schedule I controlled substance, 28 grams or more. (*See* ECF No. 14-2 (Criminal Complaint, Exh. 2).) The justice court held a preliminary hearing on April 8, 2013, and, at the conclusion of the preliminary hearing, bound Grow over to the district court. (*See* ECF No. 14-3 (Transcript of Preliminary Hearing, Exh. 3).) In the First Judicial District Court (Carson City), on April 10, 2013, Grow was charged, by information, with trafficking in a Schedule I controlled substance, 28 grams or more. (*See* ECF No. 14-6 (Criminal Information, Exh. 6).)

In its order on Grow's direct appeal, the Nevada Court of Appeals described the facts of the case, as revealed by the evidence at trial, as follows:

In 2013, officers of the Nevada Department of Public Safety Investigations Division Tri-Net Narcotics Task Force arrested Billy Southern

for selling illegal drugs. While speaking with Southern, the officers gave him the opportunity to cooperate as a confidential informant (also known as a "cooperating individual") in exchange for a reduced sentencing recommendation on his charges. Prior to selecting Southern as a confidential informant, Tri-Net conducted a "reliability check" to verify that he would be a reliable source. In the presence of the officers, Southern arranged, via a controlled buy, to purchase one ounce of methamphetamine from appellant Joshua Ryan Grow. On the same day, Grow, along with his friend, Sonja Cortinas, arrived at Southern's residence, where they were immediately arrested by the officers. The officers searched Grow and found 5.6 grams of methamphetamine on his person. The officers found a container, which was disguised as a car speaker and filled with approximately one ounce of methamphetamine, underneath a coffee table in the living room. Grow, Southern, and Cortinas all denied ownership of the container. Upon further investigation, the officers concluded that Grow owned the container and charged him accordingly.

(ECF No. 15-27 at 2–3 (Order of Affirmance, Exh. 63 at 1–2).)

Grow's trial was held on December 17 and 18, 2013. (*See* ECF Nos. 14-28, 14-31 (Transcript of Jury Trial, December 17-18, 2014, Exhs. 28, 31).) The jury found Grow guilty of the charge in the information. (*See* ECF No. 15 (Verdict, Exh. 36).) Grow was sentenced, on May 19, 2014, to eight to twenty years in prison; a judgment of conviction was filed on May 21, 2014, and an amended judgment was filed on June 5, 2014. (*See* ECF No. 15-9 (Judgment of Conviction, Exh. 45); ECF No. 15-11 (Amended Judgment of Conviction, Exh. 47).)

Grow appealed. (*See* ECF No. 15-19 (Fast Track Statement, Exh. 55).) The Nevada Court of Appeals affirmed the amended judgment of conviction on May 28, 2015. (*See* ECF No. 15-27 (Order of Affirmance, Exh. 63).) Grow petitioned the Court of Appeals for rehearing. (*See* ECF No. 15-28 (Petition for Rehearing, Exh. 64).) On June 29, 2015, the Court of Appeals denied rehearing, but ordered its order of affirmance amended to delete a footnote regarding Grow's sentence. (*See* ECF No. 15-29 (Order Denying Rehearing and Amending Order, Exh. 65).)

On October 1, 2015, Grow filed, in the state district court, a *pro se* post-conviction petition for writ of habeas corpus. (*See* ECF No. 16-2 (Petition for Writ of Habeas Corpus Post-Conviction, Exh. 73).) Counsel was appointed for Grow, and, with counsel, Grow filed a supplemental petition. (*See* ECF No. 16-7 (Supplemental Post-Conviction Petition

for a Writ of Habeas Corpus, Exh. 78).) The state district court held an evidentiary hearing, then denied Grow's petition on September 6, 2016. (*See* ECF No. 16-16 (Order Denying Petition for Post-Conviction Writ of Habeas Corpus, Exh. 87).) Grow appealed. (*See* ECF No. 16-29 (Appellant's Opening Brief, Exh. 100).) The Nevada Court of Appeals affirmed the denial of Grow's petition on August 16, 2017. (*See* ECF No. 16-35 (Order of Affirmance, Exh. 106).)

This Court received a *pro se* petition for writ of habeas corpus from Grow, initiating this action, on October 23, 2017 (ECF No. 7). The Court reads Grow's petition to assert the following claims:

1A. Grow's federal constitutional rights were violated as a result of ineffective assistance of his trial counsel, on account of his trial counsel's failure to request a jury instruction consistent with *Champion v. State*, 87 Nev. 542 (1971).

1B. Grow's federal constitutional rights were violated as a result of ineffective assistance of his trial counsel, on account of his trial counsel's failure to request a "mere presence" jury instruction.

1C. Grow's federal constitutional rights were violated as a result of ineffective assistance of his appellate counsel, on account of his appellate counsel's failure to claim, on his direct appeal, that his federal constitutional right to due process of law was violated by the lack of a jury instruction consistent with *Champion v. State*, 87 Nev. 542 (1971).

1D. Grow's federal constitutional rights were violated as a result of ineffective assistance of his appellate counsel, on account of his appellate counsel's failure to claim, on his direct appeal, that his federal constitutional right to due process of law was violated by the lack of a "mere presence" jury instruction.

2A. Grow's federal constitutional rights were violated because there was insufficient evidence presented at trial to support his conviction.

2B. Grow's federal constitutional rights were violated as a result of ineffective assistance of his trial counsel, on account of his trial counsel's failure to move for a directed verdict or for a judgment of acquittal.

3A. Grow's federal constitutional rights were violated as a result of ineffective assistance of his trial counsel, on account of his trial counsel's failure to move to exclude evidence regarding a piece of material found in his vehicle.

3B. Grow's federal constitutional rights were violated as a result of the admission of evidence at trial regarding a piece of material found in his vehicle.

4A.     Grow's federal constitutional rights were violated as a result of evidence of prior bad acts.

4B.     Grow's federal constitutional rights were violated as a result of ineffective assistance of his trial counsel, on account of his trial counsel's failure to adequately object to introduction of evidence of prior bad acts.

5A.     Grow's federal constitutional rights were violated as a result of ineffective assistance of his trial counsel, on account of his trial counsel's failure to move to exclude evidence regarding a photograph found on his mobile telephone.

5B.     Grow's federal constitutional rights were violated as a result of ineffective assistance of his trial counsel, on account of his trial counsel's failure to move to exclude evidence regarding a container containing methamphetamine.

6.      Grow's federal constitutional rights were violated as a result of the cumulative effect of the alleged errors.

(See ECF No. 7 (Petition for Writ of Habeas Corpus).)

On February 2, 2018, Respondents filed a motion to dismiss (ECF No. 13), arguing that none of Grow's claims were exhausted in state court, and that certain of his claims are not cognizable in this federal habeas corpus action. The Court ruled on the motion to dismiss on August 6, 2018 (ECF No. 21), granting it in part and denying it in part. The Court dismissed Grounds 1C, 1D, 3B and 4A of Grow's petition, and denied the motion in all other respects.

Respondents then filed an answer on November 5, 2018 (ECF No. 24), responding to Grow's remaining claims. Grow filed a reply on March 11, 2019 (ECF No. 33).

## III.    DISCUSSION

### A.    Standard of Review

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act (AEDPA):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (quoting *Williams*, 529 U.S. at 409).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing standard as "a difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

**B. Analysis of Petitioner's Claims**

**1. Ground 1A**

In Ground 1A of his habeas petition, Grow claims that his federal constitutional rights were violated as a result of ineffective assistance of his trial counsel, on account of his trial counsel's failure to request a jury instruction consistent with *Champion v. State*, 490 P.2d 1056 (Nev. 1971). (*See* ECF No. 7 at 25–30 (Petition for Writ of Habeas Corpus).) *Champion* is a 1971 Nevada Supreme Court opinion, in which that court held that, under certain circumstances, a criminal defendant is entitled to a jury instruction concerning an addict-informer's testimony.

Grow did not assert this claim of ineffective assistance of his trial counsel on either his direct appeal or the appeal in his state habeas action. (*See* ECF No. 15-19 (Fast Track Statement, Exh. 55); ECF No. 16-29 (Appellant's Opening Brief, Exh. 100).) However, in the August 6, 2018 order, the Court determined that any attempt to assert this claim in state court now, by means of a second state habeas petition, would be procedurally barred, under NRS §§ 34.726 and 34.810, as an untimely and successive petition. (*See* ECF No. 21 at 4–6 (Order entered August 6, 2018).) The Court ruled that the claim is therefore subject to dismissal as procedurally defaulted unless Grow can show cause and prejudice relative to the procedural default, and the Court pointed out that Grow might be able to show cause and prejudice on account of ineffective assistance of counsel in his state habeas action under *Martinez v. Ryan*, 566 U.S. 1 (2012). The Court determined that application of *Martinez* would raise the question of the merits of the claim, such that the matter of the procedural default would be better addressed after the briefing of the merits of the claim by the parties.

In *Coleman v. Thompson*, 501 U.S. 722 (1991), the Supreme Court held that a state prisoner who fails to comply with the state's procedural requirements in presenting his claims is barred by the adequate and independent state ground doctrine from obtaining a writ of habeas corpus in federal court. *Coleman*, 501 U.S. at 731–32 ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas

petitioner who has failed to meet the state's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."). Where such a procedural default constitutes an adequate and independent state ground for denial of habeas corpus, the default may be excused only if "a constitutional violation has probably resulted in the conviction of one who is actually innocent," or if the prisoner demonstrates cause for the default and prejudice resulting from it. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Id.* at 488. For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991). With respect to the prejudice prong, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989) (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)).

In *Martinez v. Ryan*, 566 U.S. 1, the Supreme Court ruled that ineffective assistance of post-conviction counsel may serve as cause to overcome the procedural default of a claim of ineffective assistance of trial counsel. The *Coleman* Court had held that the absence or ineffective assistance of state post-conviction counsel generally could not establish cause to excuse a procedural default because there is no constitutional right to counsel in state post-conviction proceedings. *See Coleman*, 501 U.S. at 752–54. In *Martinez*, however, the Supreme Court established an equitable exception to that rule, holding that the absence or ineffective assistance of counsel at an initial-review collateral proceeding may establish cause to excuse a petitioner's procedural default of substantial claims of ineffective assistance of trial counsel. *See Martinez*, 566 U.S. at 9. The Court described "initial-review collateral proceedings" as "collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." *Id.* at 8. Accordingly,

7

under the equitable rule of *Martinez*, a habeas petitioner may establish cause for the procedural default of an ineffective assistance of trial counsel claim "where the state ... required the petitioner to raise that claim in collateral proceedings, by demonstrating two things: (1) 'counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 . . . (1984),' and (2) 'the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.'" *Cook v. Ryan*, 688 F.3d 598, 607 (9th Cir. 2012) (quoting *Martinez*, 566 U.S. at 14); *see also Runningeagle v. Ryan*, 825 F.3d 970, 982 (9th Cir. 2016) (discussing *Martinez* standards).

In *Strickland*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel: the petitioner must demonstrate (1) that the attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. A court considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id*. at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. And, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.

Grow contends that his trial counsel was ineffective for failing to request a jury instruction, consistent with *Champion*, admonishing the jury to exercise caution in weighing the testimony of addict-informers. Grow alleges that the state presented two

///

addict witnesses – Southern and Cortinas – who had much to gain by acting as informants and incriminating Grow.

On Grow's direct appeal, in ruling on a different but related claim, that is, the substantive claim underlying the ineffective assistance of counsel claim considered here, the Nevada Court of Appeals held that the trial court's failure to give the *Champion* instruction was not plain error, and the court explained its ruling as follows:

> Grow asserts the district court erred by failing to give two jury instructions. Upon request, a defendant in a criminal case is entitled to a jury instruction on his theory of the case, as long as some evidence, no matter how weak or incredible, exists to support it. *Williams v. State*, 99 Nev. 530, 531, 665 P.2d 260 (1983). However, the failure to request a jury instruction precludes appellate review unless the alleged error is patently prejudicial and requires the court to act *sua sponte* to protect a defendant's right to a fair trial. *Flanagan v. State*, 112 Nev. 1409, 1423, 930 P.2d 691, 700 (1996). Where trial counsel fails to preserve an issue, this court reviews for plain error, meaning we inquire (1) whether there was error; (2) whether the error was plain or clear; and (3) whether the error affected the defendant's substantial rights. *United States v. Cotton*, 535 U.S. 625, 631, 122 S. Ct. 1781, 152 L.Ed.2d 860 (2002).
>
> Here, Grow did not ask the trial court to give the two instructions he now asserts should have been given, but asserts the court should nonetheless have given those instructions *sua sponte*. Thus, we review the district court's alleged failure to give those jury instructions for plain error.
>
> First, Grow argues that the district court erred by not instructing the jury consistent with *Champion v. State*, 87 Nev. 542, 490 P.2d 1056 (1971). In particular, Grow contends the district court should have given an instruction admonishing the jury to exercise caution in weighing the testimony of addict-informers, especially when Southern and Cortinas were untrustworthy; their status as untrustworthy informants was known to the State; and but for the addict-informers' testimony, there was no evidence to demonstrate the exchange of drugs.
>
> The State counters that a cautionary instruction was unnecessary in this case because the informants were not known to be unreliable; the addict-informers' testimony was corroborated by extensive evidence; the jury received a general cautionary instruction; and Grow cross-examined the informants and delved into their biases and motives for testifying. After reviewing the record, we agree with the State and conclude that the district court did not commit plain error in failing to give this instruction. While the *Champion* court held that the failure to give a cautionary instruction *sua sponte* constituted plain error in that case, not all circumstances, including those found here, require a cautionary instruction. *See King v. State*, 116 Nev. 349, 356, 998 P.2d 1172, 1176 (2000) (distinguishing *Champion* because the informant "was not known to be or deemed unreliable."). [Footnote: We note that it is unclear whether Cortinas qualifies as an addict informer because Tri-Net officers did not ask her formally to act as a confidential informant, nor did they use her to set up the controlled buy, as they did with Southern. However, both parties refer to Cortinas as an

9

informant in their briefs. Further, while Cortinas may not have participated to the extent that Southern did with regard to Grow's arrest and conviction, she cooperated with Tri–Force officers upon her arrest. For the purpose of this appeal, and without deciding the issue, we assume that [Cortinas] qualifies as an addict-informer.]

(ECF No. 15-27 at 5–6 (Order of Affirmance, Exh. 63 at 4–5).) This ruling by the Nevada Court of Appeals on issues of Nevada law is authoritative and is not subject to review in this federal habeas corpus action. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Bonin v. Calderon*, 59 F.3d 815, 841 (9th Cir. 1995). And, Grow makes no argument, and the Court is aware of no basis for an argument, that any federal law requires a state trial court to give an addict-informer instruction under the circumstances in this case.

Therefore, given the Nevada Court of Appeals' ruling that the instruction was unnecessary, this Court determines that Grow's trial counsel was not ineffective for not requesting the instruction, and Grow's state post-conviction counsel was not ineffective for not pursuing this claim of ineffective assistance of trial counsel in Grow's state habeas action.

Grow, then, does not show cause and prejudice regarding the procedural default of this claim. Ground 1A will be denied as procedurally defaulted.

## 2. Ground 1B

In Ground 1B of his habeas petition, Grow claims that his federal constitutional rights were violated as a result of ineffective assistance of his trial counsel, on account of his trial counsel's failure to request a "mere presence" jury instruction. (*See* ECF No. 7 at 25–30 (Petition for Writ of Habeas Corpus).) Grow asserts that he had a right to have the jury be instructed that mere presence at the scene where drugs were found was insufficient to establish his guilt, and that his trial counsel should have requested such an instruction. (*See id.*)

As with Ground 1A, Grow did not assert this claim of ineffective assistance of his trial counsel on either his direct appeal or the appeal in his state habeas action. (*See* ECF No. 15-19 (Fast Track Statement, Exh. 55); ECF No. 16-29 (Appellant's Opening Brief, Exh. 100).) In the August 6, 2018 order, the Court determined that the claim is

unexhausted but procedurally defaulted unless Grow can show cause and prejudice for the procedural default under *Martinez*. As with Ground 1A, the Court reserved the *Martinez* analysis until after the parties fully briefed the merits of the claim.

On Grow's direct appeal, considering the related claim that Grow's rights were violated by the trial court not giving a mere presence instruction *sua sponte*, the Nevada Court of Appeals held that the trial court's failure to give the instruction *sua sponte* was not plain error. (ECF No. 15-27 at 7 (Order of Affirmance, Exh. 63 at 6).) The court explained:

> Second, Grow argues that the district court erred in failing to instruct the jury on "mere presence." At trial, defense counsel argued that Grow was merely present when the container was discovered and maintained that the drugs in the container were not his. Thus, Grow contends the failure to instruct the jury that mere presence is insufficient to establish guilt operated to deprive him of his due process rights. The State counters that Grow's substantial rights were not affected and he was not prejudiced because there was substantial evidence to show that Grow was a party to the offense and not merely present.
>
> At trial, Grow did not request a "mere presence" instruction, and therefore our review is limited to determining whether "plain error" occurred. After reviewing the record, we again agree with the State and conclude that the district court did not commit plain error in failing to give this instruction. The State presented evidence that Grow was not merely present in the room where drugs were found, but rather that Grow brought the drugs with him from his car into the room. Under these circumstances, the failure to give a "mere presence" [instruction] was not plain error.

(*Id.*)

Here again, the ruling by the Nevada Court of Appeals on an issue of Nevada law is authoritative and is not subject to review in this federal habeas corpus action. *See Estelle*, 502 U.S. at 67–68; *Bonin*, 59 F.3d at 841. And, again, Grow does not cite, and the Court does not know of, any federal authority that would arguably require such an instruction to be given in Grow's state-court trial.

Therefore, given the Nevada Court of Appeals' ruling that the instruction was unnecessary, this Court determines that Grow's trial counsel was not ineffective for not requesting the instruction, and Grow's state post-conviction counsel was not ineffective

///

for not pursuing this claim of ineffective assistance of trial counsel in Grow's state habeas action.

Grow does not show cause and prejudice regarding the procedural default of this claim. Ground 1B will be denied as procedurally defaulted.

### 3. Ground 1C

In Ground 1C of his habeas petition, Grow claims that his federal constitutional rights were violated as a result of ineffective assistance of his appellate counsel, on account of his appellate counsel's failure to claim, on his direct appeal, that his federal constitutional right to due process of law was violated by the lack of a jury instruction consistent with *Champion*. (*See* ECF No. 7 at 25–30 (Petition for Writ of Habeas Corpus).) This claim was dismissed, as procedurally defaulted, in the Court's August 6, 2018 order. (*See* ECF No. 21 at 7, 13.)

### 4. Ground 1D

In Ground 1D of his habeas petition, Grow claims that his federal constitutional rights were violated as a result of ineffective assistance of his appellate counsel, on account of his appellate counsel's failure to claim, on his direct appeal, that his federal constitutional right to due process of law was violated by the lack of a "mere presence" jury instruction. (*See* ECF No. 7 at 25–30 (Petition for Writ of Habeas Corpus).) This claim was dismissed, as procedurally defaulted, in the Court's August 6, 2018 order. (*See* ECF No. 21 at 7–8, 13.)

### 5. Ground 2A

In Ground 2A of his habeas petition, Grow claims that his federal constitutional rights were violated because there was insufficient evidence presented at trial to support his conviction. (*See* ECF No. 7 at 32–33 (Petition for Writ of Habeas Corpus).)

"The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 309 (1979) (citing *In re Winship*, 397 U.S. 358 (1970)). On federal habeas corpus review of a state-court judgment of conviction pursuant to 28 U.S.C. § 2254, the petitioner "is entitled to habeas

corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324.The court must assume that the trier of fact resolved any evidentiary conflicts in favor of the prosecution and must defer to such resolution. *Id.* at 326. Generally, the credibility of witnesses is beyond the scope of a review of the sufficiency of the evidence. *Schlup v. Delo*, 513 U.S. 298, 330 (1995).

Grow asserted this claim on his direct appeal. (*See* ECF No. 15-19 at 15–17 (Fast Track Statement, Exh. 55 at 14–16).) The Nevada Court of Appeals ruled on the claim as follows:

> Grow next argues that there was insufficient evidence to support his conviction because he, Southern, and Cortinas all had equal opportunity, access, and ability to have placed the drug-filled container under the coffee table. According to Grow, insufficient evidence existed to establish that Grow was the one who trafficked the drugs.
>
> Evidence is sufficient to support a conviction if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Thompson v. State*, 125 Nev. 807, 816, 221 P.3d 708, 715 (2009) (internal quotation marks omitted). The verdict of a jury will not be overturned when substantial evidence exists to support it, and even circumstantial evidence alone can sustain a conviction. *Id.*; *Deveroux v. State*, 96 Nev. 388, 391, 610 P.2d 722, 724 (1980). "Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion." *Thompson*, 125 Nev. at 816, 221 P.3d at 715 (internal quotation marks omitted). Moreover, it is for the jury to determine the degree of weight and credibility to give to witness testimony and other trial evidence. *Bolden v. State*, 97 Nev. 71, 73, 624 P.2d. 20, 20 (1981). Although mere presence at the scene of a crime cannot support an inference that a defendant is a party to an offense, presence combined with other circumstances, such as the defendant's presence, companionship, and conduct prior, during, and after the crime, may support this inference. *Winston v. Sheriff, Clark County*, 92 Nev. 616, 618, 555 P.2d 1234,1235 (1976); *Walker v. State*, 113 Nev. 853, 869, 944 P.2d, 762, 773 (1997).
>
> We conclude that the jury, acting reasonably and rationally, could have found the elements of Trafficking in a Schedule I Controlled Substance, 28 Grams or More, a category A felony, pursuant to NRS 453.3385, beyond a reasonable doubt. [Footnote: NRS 453.3385 provides, in relevant part, that "a person who knowingly or intentionally sells, manufactures, delivers or brings into this State or who is knowingly or intentionally in actual or constructive possession of ... any controlled substance which is listed in schedule I ... shall be punished ... if the quantity involved ... [is] 28 grams or more, for a category A felony ..."] Based upon the evidence presented at trial, the jury could have concluded that Grow agreed via a phone call witnessed by Tri-Net officers to sell one ounce of methamphetamine. Prior to Grow's arrival, officers systematically and

thoroughly searched Southern's living room and did not find the container in the area or on Southern himself. There were no traces of the container underneath the coffee table, and Tri-Net officers were confident that the container was not in the residence before Grow arrived. In addition, Grow's cell phone contained a photograph of the same container that officers found. Accordingly, substantial evidence exists to support Grow's conviction for drug trafficking.

(ECF No. 15-27 at 7–9 (Order of Affirmance, Exh. 63 at 6–8).)

This Court agrees with the Nevada Court of Appeals' ruling. The Court has examined the trial record, and concludes that there was, in fact, overwhelming evidence from which a rational juror could have found Grow guilty beyond a reasonable doubt. For example: police officers listened to the telephone call on which Grow agreed to sell Southern an ounce of methamphetamine; police officers observed Grow arrive at Southern's residence to sell him the methamphetamine as arranged on the phone call; after Grow was arrested in Southern's residence, police officers found a container, disguised as a car speaker, with just under an ounce of methamphetamine in it, near where Grown had been laying on the floor; police officers had thoroughly searched Southern's residence before Grow arrived, and had not found the container; Southern had previously seen the container in Grow's possession; there was a photograph of the container on Grow's telephone; there were indications in the photograph of the container on Grow's telephone that it was taken in a shed at Grow's residence; the container fit into a hole on the driver's side front door of Grow's vehicle; the container had material glued onto it that matched exactly, and was apparently cut from, a piece of material found in Grow's vehicle. (*See* ECF Nos. 14-28, 14-31 (Transcript of Jury Trial, December 17-18, 2014, Exhs. 28, 31).) In light of the evidence presented at trial, the Court finds Grow's claim that there was insufficient evidence to support his conviction to be meritless.

The state court's ruling on this claim was not contrary to, or an unreasonable application of, *Jackson* or any other federal law. The Court will deny Grow habeas corpus relief with respect to Ground 2A.

///

///

### 6. Ground 2B

In Ground 2B of his habeas petition, Grow claims that his federal constitutional rights were violated as a result of ineffective assistance of his trial counsel, on account of his trial counsel's failure to move for a directed verdict or for a judgment of acquittal. (*See* ECF No. 7 at 32–33 (Petition for Writ of Habeas Corpus).)

Grow did not assert this claim of ineffective assistance of his trial counsel on either his direct appeal or the appeal in his state habeas action. (*See* ECF No. 15-19 (Fast Track Statement, Exh. 55); ECF No. 16-29 (Appellant's Opening Brief, Exh. 100).) In the August 6, 2018 order, the Court determined that the claim is unexhausted but procedurally defaulted unless Grow can show cause and prejudice for the procedural default under *Martinez*, but the Court reserved the *Martinez* analysis until after the parties fully briefed the merits of the claim.

In view of the evidence at trial supporting Grow's conviction (*see* Part III.B.5, *supra*), the Court finds that this claim of ineffective assistance of counsel is wholly insubstantial. Grow's trial counsel cannot be faulted for not filing a motion for directed verdict or judgment of acquittal. Grow's trial counsel was not ineffective for not making such a motion, and Grow's state post-conviction counsel was not ineffective for not pursuing this claim of ineffective assistance of trial counsel in Grow's state habeas action.

Grow does not show cause and prejudice regarding the procedural default of this claim. Ground 2B will be denied as procedurally defaulted.

### 7. Ground 3A

In Ground 3A of his habeas petition, Grow claims that his federal constitutional rights were violated as a result of ineffective assistance of his trial counsel, on account of his trial counsel's failure to move to exclude evidence regarding the piece of material found in his vehicle. (*See* ECF No. 7 at 35–37 (Petition for Writ of Habeas Corpus).) Grow claims that the evidence should have been excluded because the state failed to establish a proper chain of custody for the material and failed to preserve the vehicle in its proper condition after it was impounded. (*See id.*) A detective located the vehicle at an auto

wrecking yard about five months after Grow's arrest, and, in the vehicle, found the material that was like the material on the container in which the methamphetamine was found, with a circle cut out of it, matching perfectly the material on the container. (*See* ECF No. 14-28 at 124–29 (Testimony of Charles Stetler, Transcript of Jury Trial, December 17, 2014, Exh. 28 at 123–28).)

Grow did not assert this claim of ineffective assistance of his trial counsel on either his direct appeal or the appeal in his state habeas action. (*See* ECF No. 15-19 (Fast Track Statement, Exh. 55); ECF No. 16-29 (Appellant's Opening Brief, Exh. 100).) So, here again, in the August 6, 2018 order, the Court determined that the claim is unexhausted but procedurally defaulted unless Grow can show cause and prejudice for the procedural default under *Martinez*, but the Court reserved the *Martinez* analysis until after the parties fully briefed the merits of the claim.

The Court first observes that Grow's trial counsel did in fact object to the admission of the material into evidence, but the trial court ultimately overruled the objection and admitted the evidence. (*See* ECF No. 14-28 at 139–45 (Transcript of Jury Trial, December 17, 2014, Exh. 28 at 137–44).) Grow does not make any showing that his trial counsel could have been more successful by presenting the objection differently, or by filing a pre-trial motion in limine.

Furthermore, the Nevada Court of Appeals ruled as follows on the related claim that the trial court erred, under state law, in allowing admission of the piece of material into evidence:

> Grow also argues that the felt fabric should not have been admitted into evidence because the chain of custody is non-existent; thus, the failure in the chain of custody results in insufficient evidence for a drug conviction. To prove chain of custody and competent identification of evidence, there must be a reasonable showing that the evidence was not substituted, altered, or tampered with, and the offered evidence must be the same or reasonably similar to the substance seized. *Burns v. Sheriff, Clark County*, 92 Nev. 533, 534, 554 P.2d 257, 258 (1976). Any gap in the chain of custody "goes to the weight of the evidence," *Sorce v. State*, 88 Nev. 350, 352–53, 497 P.2d 902, 903 (1972), and the jury, rather than the court, must assess the weight of the evidence. *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992). Further, we review the district court's decision to admit evidence for abuse of discretion and will not reverse that decision absent manifest error. *Ledbetter v. State*, 122 Nev. 252, 259, 129 P.3d 671, 676 (2006). We

only overturn convictions based on erroneous evidentiary rulings for abuse of discretion if the error more likely than not affected the verdict. *See United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004).

We conclude that there was no manifest error in the district court's decision to admit the felt. Moreover, the admission of the felt, more likely than not, had no effect on the verdict. Even without the admission of the felt, the jury could reasonably find from the other evidence presented that Grow committed the charged crime. [Footnote: In his argument why the district court should not have admitted the felt, Grow appears to portray the State's inaction as a failure to preserve the vehicle in proper condition, while the State characterizes its inaction as a failure to gather the felt from the vehicle at the time of Grow's arrest. Under either analysis, the result is the same. With regard to the State's failure to preserve the vehicle, Grow does not establish that the State acted in bad faith, nor does he show that he suffered undue prejudice and the exculpatory value of the vehicle was apparent before its loss or destruction. *See Daniel v. State*, 119 Nev, 498, 520, 78 P.3d 890, 905 (2003). Therefore, the State did not violate due process by failing to preserve the vehicle in proper condition. Similarly, with regard to the State's failure to gather the felt from the vehicle at the time of Grow's arrest, Grow does not establish that the fabric was material or that the State acted in negligence, gross negligence, or bad faith. *See Daniels v. State*, 114 Nev. 261, 268, 956 P.2d 111, 115 (1998). Therefore, the State did not violate due process by failing to gather the felt from the vehicle at the time of Grow's arrest.]

(ECF No. 15-27 at 9–10 (Order of Affirmance, Exh. 63 at 8–9).)

The Nevada Court of Appeals' ruling establishes authoritatively that, under state law, the evidence at issue was admissible, and any different or further objection by trial counsel to the admission of the evidence would have been unsuccessful. *See Estelle*, 502 U.S. at 67–68; *Bonin*, 59 F.3d at 841. And, there is no colorable argument that the admission of this evidence violated Grow's federal constitutional rights. *See Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995) (admission of evidence by state court does not violate defendant's federal rights "unless it rendered the trial fundamentally unfair in violation of due process").

The Court, then, determines that Grow's trial counsel was not ineffective with respect to the admission of the material into evidence, and Grow's state post-conviction counsel was not ineffective for not pursuing this claim of ineffective assistance of trial counsel in Grow's state habeas action. Grow does not show cause and prejudice regarding the procedural default of this claim. Ground 3A will be denied as procedurally defaulted.

### 8. Ground 3B

In Ground 3B of his habeas petition, Grow claims that his federal constitutional rights were violated as a result of the admission of evidence at trial regarding the piece of material found in his vehicle. (*See* ECF No. 7 at 35–37 (Petition for Writ of Habeas Corpus).) This claim was dismissed, as procedurally defaulted, in the Court's August 6, 2018 order. (*See* ECF No. 21 at 9–10, 13 (Order entered August 6, 2018).)

### 9. Ground 4A

In Ground 4A of his habeas petition, Grow claims that his federal constitutional rights were violated as a result of evidence of prior bad acts. (*See* ECF No. 7 at 39–40 (Petition for Writ of Habeas Corpus).) This claim was dismissed, as procedurally defaulted, in the Court's August 6, 2018 order. (*See* ECF No. 21 at 10–11, 13.)

### 10. Ground 4B

In Ground 4B of his habeas petition, Grow claims that his federal constitutional rights were violated as a result of ineffective assistance of his trial counsel, on account of his trial counsel's failure to adequately object to introduction of evidence of prior bad acts. (*See* ECF No. 7 at 39–40 (Petition for Writ of Habeas Corpus).)

Before trial, the state informed the trial court that they advised their witnesses not to testify about prior interactions with Grow or anything that could be construed as evidence of prior bad acts by Grow. (*See* ECF No. 14-28 at 8–9 (Transcript of Jury Trial, December 17, 2014, Exh. 28 at 7–8).) Grow's counsel noted his concerns in that regard but accepted the state's representations. (*See id.*)

On direct examination of Detective Stetler, one of the officers who listened in on the call in which Southern and Grow arranged the drug deal, the prosecutor asked Stetler if he recognized the voice on the other end of the call, and Stetler stated in response that he had dealt with Grow on numerous previous occasions, including "domestic incidences." (ECF No. 14-28 at 113.) The trial judge immediately interrupted the testimony and reminded counsel and the witness of the prior agreement. *See id.* Defense counsel stated an objection. (*See id.* at 114.) The court then admonished the jury to "disregard

anything in respect to any prior incidences or anything else concerning Mr. Grow." (*Id.*) Stetler then testified simply that he was familiar with Grow's voice and recognized it on the call. (*Id.*) After the court excused the jurors for the night, the judge noted on the record that he stopped Stetler's testimony based upon the pre-trial agreement of the parties. (*Id.* at 150.) The next day, during cross-examination, Grow's counsel questioned Stetler about how he recognized Grow's voice, apparently attempting to show that there was nothing distinct about his voice that would allow Stetler to recognize it. (*See* ECF No. 14-31 at 19–21 (Transcript of Jury Trial, December 18, 2014, Exh. 31 at 18–20).) Then, on redirect examination, the prosecutor revisited the subject and Stetler testified:

> My contact with people, I, I tend to remember who I contact with, who I'm looking at, who I know is out there on the streets, who I might be investigating. I become familiar with them.
>
> In my previous contacts with him, I've talked to him. I have spoken to him over the phone. I've contacted him in public, in casino settings and things of that nature, where I've had numerous contacts with him.
>
> I actually, I get along quite well with Mr. Grow. So we've had civilized discussions. It hasn't always been completely negative.

(ECF No. 14-31 at 54–55.) Defense counsel interrupted and asked to "limit this area of discussion, if it's not necessary to the question." (*Id.* at 55.) The trial court construed that as an objection and sustained the objection. (*Id.*) The prosecutor had Stetler confirm that he believed it to be Grow on the telephone, and he moved on to another subject. (*Id.* at 56.)

Grow did not assert this claim of ineffective assistance of his trial counsel on either his direct appeal or the appeal in his state habeas action. (*See* ECF No. 15-19 (Fast Track Statement, Exh. 55); ECF No. 16-29 (Appellant's Opening Brief, Exh. 100).) So, again, in the August 6, 2018 order, the Court determined that the claim is unexhausted but procedurally defaulted unless Grow can show cause and prejudice for the procedural default under *Martinez*, but the Court reserved the *Martinez* analysis until after the parties fully briefed the merits of the claim.

///

On his direct appeal, Grow did assert a claim, based on state law only, that the trial court erred in admitting the testimony of Stetler mentioning his prior contacts with Grow, and the Nevada Court of Appeals ruled on that claim as follows:

> Further, Grow argues that the State agreed not to admit bad act evidence, but it did so anyway during trial, which led to a violation of Grow's due process rights. Grow particularly cites to the testimony of Officer Stetler, who mentioned his history with Grow.
>
> Evidence of prior crimes or wrongs is not admissible to prove the defendant acted in conformity with the alleged bad acts; however, this evidence may be admissible for other purposes. NRS 48.045(2). We review a district court's decision whether to admit bad act evidence for abuse of discretion. *Salgado v. State*, 114 Nev. 1039, 1043, 968 P.2d 324, 327 (1998). Any defect that does not affect substantial rights is harmless error. NRS 178.598.
>
> Moreover, a district court can cure inadvertent or spontaneous references to other criminal activity. In *Sterling v. State*, the defendant was charged with, among other crimes, lewdness with a minor. 108 Nev. 391, 393, 834 P.2d 400, 401 (1992). One of the witnesses, the victim's grandmother, testified that she had once observed the defendant using drugs. *Id*. The prosecution did not solicit this statement, and the trial court immediately admonished the jury to disregard the statement. *Id*. at 402, 834 P.2d at 405. Accordingly, the Nevada Supreme Court held that inadvertent and unsolicited references that a witness discloses about a defendant's prior criminal activity can be cured by the district court's immediate admonishment to the jury to disregard the statement. *Id*.
>
> We conclude that this case is analogous to *Sterling*. Here, while Stetler directly referenced Grow's criminal past twice during his testimony, these references were inadvertent and unsolicited. Similar to the witness in Sterling, Stetler made references to Grow's past criminal activity without solicitation by the State. Further, the court immediately admonished the jury, which properly cured any potential prejudice.
>
> * * *
>
> Therefore, Stetler's testimony did not violate Grow's due process rights to a fair trial and did not constitute misconduct by the State.

(ECF No. 15-27 at 11–12 (Order of Affirmance, Exh. 63 at 10–11).)

Grow does not make any showing that his counsel should have done more to attempt to limit Stetler's testimony regarding his prior contacts with Grow. Plainly, some testimony of their prior contacts was relevant and admissible, as there was an issue as to how Stetler could recognize Grow's voice. And, the Nevada Court of Appeals' ruling indicates that the testimony was admissible under state law and that there was no error

under state law. *See Estelle*, 502 U.S. at 67–68; *Bonin*, 59 F.3d at 841. Furthermore, there is no colorable argument that the admission of this testimony violated Grow's federal constitutional rights. *See Johnson*, 63 F.3d at 930. The testimony at issue here did not render Grow's trial fundamentally unfair.

Therefore, Grow's trial counsel was not ineffective with respect to Stetler's testimony about his prior contacts with Grow, and Grow's state post-conviction counsel was not ineffective for not pursuing this claim of ineffective assistance of trial counsel in Grow's state habeas action. Grow does not show cause and prejudice regarding the procedural default of this claim. Ground 4B will be denied as procedurally defaulted.

### 11. Ground 5A

In Ground 5A of his habeas petition, Grow claims that his federal constitutional rights were violated as a result of ineffective assistance of his trial counsel, on account of his trial counsel's failure to move to exclude evidence regarding a photograph found on his mobile telephone. (*See* ECF No. 7 at 42–45 (Petition for Writ of Habeas Corpus).) The photograph depicted the container disguised as a speaker in which the methamphetamine was found and tended to prove that Grow had been in possession of the container. Grow contends that he was not read his *Miranda* rights before he signed a consent to allow the search of his telephone, and he contends that, at any rate, he only consented to the officers viewing the call log on the telephone, and not the photographs. (*See id.*) He asserts that his trial counsel was ineffective for not moving to exclude the photograph of the container from evidence.

Here again, Grow did not assert this claim of ineffective assistance of his trial counsel on either his direct appeal or the appeal in his state habeas action. (*See* ECF No. 15-19 (Fast Track Statement, Exh. 55); ECF No. 16-29 (Appellant's Opening Brief, Exh. 100).) So, regarding this claim too, in the August 6, 2018 order, the Court determined that the claim is unexhausted but procedurally defaulted unless Grow can show cause and prejudice for the procedural default under *Martinez*, but the Court reserved the *Martinez* analysis until after the parties fully briefed the merits of the claim.

1  At trial, Detective Stetler testified as follow regarding the photograph of the

2  container found on Grow's telephone:

3        Q.    Did you ever see that container anywhere else?

4        A.    I did.

5        Q.    Where was that?

6        A.    In a photograph.

7        Q.    Can you talk about that a little?

8        A.    While en route to the jail with Josh Grow, I read him his
   *Miranda* rights, as I explained to him. Once we got to the jail, Josh Grow
9  began to talk to me about other involvements and other drugs. And, again,
   another bigger fish.
10

11        At that time, I had to stop him. He advised me of something that was
   on his cell phone. I said, if you want me to search your cell phone, you're
   going to have to sign a consent to search form; I'm not just going to search
12  through your phone because.

13        He signed a consent to search form in the prebooking area, of the
   phone. Upon going through that cell phone, I found a picture of –
14

15        Q.    Before you talk about that picture in detail, I just want you to
   talk about the container in the picture.

16        A.    Okay. I found a picture, and inside of that picture, it contained
   the same cylindrical container that we had found inside the residence.
17

18        Q.    So the speaker container?

19        A.    Correct.

20        Q.    And you found a picture of the speaker container on Mr.
   Grow's phone?

21        A.    That is correct.

22        Q.    If you were to see that picture, would you recognize it today?

23        A.    Yes. Absolutely.

24

25  (ECF No. 14-28 at 122–24 (Testimony of Charles Stetler, Transcript of Jury Trial,

26  December 17, 2014, Exh. 28 at 121–23).)

27        Stetler's testimony belies Grow's claim that he did not read him his *Miranda* rights

28  before he signed the consent to have his telephone searched. And, as for the scope of

the search, there is no evidence suggesting that the consent was limited to the call log on the telephone; the evidence indicates that the consent was to search the telephone generally. Therefore, Grow does not show that there was any ground upon which his trial counsel could have challenged the admission of the photograph of the container, and he does not show any possibility that he was prejudiced by his trial counsel's failure to do so.

Grow has not shown that his trial counsel was ineffective for failing to challenge the admission into evidence of the photograph of the container in which the drugs were found, and Grow's state post-conviction counsel was not ineffective for not pursuing this claim of ineffective assistance of trial counsel in Grow's state habeas action. Grow does not show cause and prejudice regarding the procedural default of this claim. Ground 5A will be denied as procedurally defaulted.

### 12. Ground 5B

In Ground 5B of his habeas petition, Grow claims that his federal constitutional rights were violated as a result of ineffective assistance of his trial counsel, on account of his trial counsel's failure to move to exclude evidence regarding the container containing the methamphetamine. (*See* ECF No. 7 at 42–45 (Petition for Writ of Habeas Corpus).)

Grow asserted this claim in his state habeas action, and, after holding an evidentiary hearing, the state district court denied his petition, ruling as follows:

> With respect to the claim that trial counsel was ineffective based upon a failure to file a motion to suppress, trial counsel testified that, from the outset, the Petitioner denied ownership of the container in which the drugs were located. Based upon the denial of ownership of the container, trial counsel did not believe that there was any standing or would have been any utility in filing a motion to suppress. Further, he did not anticipate that the Petitioner would have testified any differently if called to testify as a witness in the context of a suppression hearing. No other testimony or evidence was presented at the time of the evidentiary hearing on the Petition and Supplemental Petition in this case.

> To prove ineffective assistance of counsel, a petitioner must demonstrate counsel's performance was deficient in that it fell below an objective standard of reasonableness, resulting [in] prejudice such that there is a reasonable probability that, but for counsel's errors, the outcome would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). In this case, at the time of the hearing, the only remaining alleged deficiency is that trial counsel failed to file a motion to suppress. Trial

23

counsel cannot be deemed ineffective for failing to file a futile motion. *See,*
*Donovan v. State*, 94 Nev. 671, 675 (1978). Based upon the testimony
presented at the evidentiary hearing in this case, a motion to suppress
would have been futile, as the Petitioner consistently denied ownership of
the container in which the drugs were located. As such, he lacked standing
to challenge any search of the container. *U.S. v. Salvucci*, 448 U.S. 83, 91-
92 (1980); *Rawlings v. Kentucky*, 448 U.S. 98, 104-05 (1980).

Trial counsel cannot be held ineffective in this case for failing to file
a futile motion to suppress.

(ECF No. 16-16 at 3 (Order Denying Petition for Post-Conviction Writ of Habeas Corpus,

Exh. 87 at 2).)

Grow appealed and raised this claim on the appeal. (*See* (ECF No. 16-29 at 8–11

(Appellant's Opening Brief, Exh. 100 at 4–7).) The Nevada Court of Appeals affirmed,

ruling as follows:

In his petition, Grow argued defense counsel was ineffective for
failing to move for suppression of evidence obtained during a warrantless
search. The district court conducted an evidentiary hearing and made the
following findings: Grow consistently denied ownership of the container in
which the drugs were found. Defense counsel did not believe Grow would
have testified differently at a suppression hearing. And any motion to
suppress this evidence would have been futile because Grow lacked
standing to challenge the search of the container.

The record supports the district court's findings, and we conclude it
did not err in denying Grow's petition. *See State v. Taylor*, 114 Nev. 1071,
1077-78, 968 P.2d 315, 320 (1998); *Hicks v. State*,96 Nev. 82, 83, 605 P.2d
219, 220 (1980); *Donovan v. State*, 94 Nev. 671, 674-75, 584 P.2d 708,
710-11 (1978).

(ECF No. 16-35 at 3 (Order of Affirmance, Exh. 106 at 2).)

Grow's trial counsel's testimony at the state-court evidentiary hearing included the

following:

Q.     And was there a strategic reason why you didn't file a motion
to suppress?

A.     Well, I didn't see any real grounds to file a motion to suppress
insofar as Mr. Grow was concerned. You know, his position or our position
was that it wasn't his dope. It was, you know, it was Billy Southern's or
somebody else. Anyway, it may be Sonja's but it wasn't his. So I didn't see
that there was any real utility served in trying to suppress that since the
contraband was found in Billy Southern's apartment and that sort of thing.
So I just didn't see the need to make a connection or attempt to make a
connection there.

24

(ECF No. 25-5 at 10–11 (Transcript of Evidentiary Hearing, Exh. 112 at 595–95).)

In view of the evidence presented in state court, particularly the testimony of Grow's trial counsel at the evidentiary hearing, the ruling of the Nevada Court of Appeals was reasonable. That court's ruling was not contrary to, or an unreasonable application of, *Strickland*, or any other federal law. The Court will deny Grow habeas corpus relief with respect to Ground 5B.

### 13. Ground 6

In Ground 6 of his habeas petition, Grow claims that the cumulative effect of the errors in his case deprived him of his rights to due process of law and a fair trial in violation of his federal constitutional rights. (*See* ECF No. 7 at 47 (Petition for Writ of Habeas Corpus).)

The Court determines that there were no errors, so there are no errors to be considered cumulatively. The Court will therefore deny Grow habeas corpus relief with respect to Ground 6.

### C. Certificate of Appealability

The standard for the issuance of a certificate of appealability requires a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c). The Supreme Court has interpreted 28 U.S.C. § 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where, as here, the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077–79 (9th Cir. 2000).

///

The Court finds that, applying the standard articulated in *Slack*, a certificate of appealability is unwarranted. The Court will deny Grow a certificate of appealability.

## IV.    CONCLUSION

It is therefore ordered that the Petition for Writ of Habeas Corpus (ECF No. 7) is denied.

It is further ordered that Petitioner is denied a certificate of appealability.

It is further ordered that the Clerk of the Court is directed to enter judgment accordingly.

DATED THIS 23rd day of October 2019.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

26